UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X

FANNY ALAVA,                                                    Civil Action No.:

                                    Plaintiff,

                    -against-                                   **COMPLAINT**

KATZ'S DELICATESSEN OF HOUSTON ST. INC.
and JAKE DELL,                                                  **JURY TRIAL REQUESTED**

                                    Defendants.

---------------------------------------------------------------------------X

        Plaintiff, Fanny Alava ("Plaintiff"), by her attorneys, Law Offices of Yale Pollack, P.C.,

as and for her Complaint against Defendants, Katz's Delicatessen of Houston St. Inc. and Jake

Dell (collectively "Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

        1.      Plaintiff worked as a server for Defendants from November 1995 until her

termination in or around April 2022.  During her employment, Plaintiff was paid well below

minimum wage and received tips without ever being provided with notice of a tip credit by

Defendants, which tips she had to share with other employees.  Despite working extensive hours

as a server for Defendants throughout her employment, in addition to not receiving minimum

wage, Plaintiff was denied overtime that should have been paid to her for weeks in which she

worked in excess of forty hours, plus spread-of-hours pay on days where her shift times exceeded

ten hours in a day.

        2.      Towards the end of her employment, Plaintiff started complaining about how

certain of Defendants' managers were receiving tips that should have only been provided to food

service workers.  After such complaints were lodged, Defendants began a campaign of

discrimination and harassment of Plaintiff based on her age and perceived disabilities, which

ultimately led to her being terminated for no legitimate business reason.

3.     Plaintiff brings this action to remedy violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et seq.* (the "FLSA").  Plaintiff seeks unpaid wages, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate legal and equitable relief, pursuant to 29 U.S.C. §§216(b) and 217, and other applicable federal law.

4.     Plaintiff also brings this action to remedy violations of New York State Labor Law, including New York Labor Law §§190 *et seq.*, §§650 et seq. (the "NYLL"), and 12 N.Y.C.R.R. §142-2.2.  Plaintiff seeks unpaid wages, statutory damages, pre- and post- judgment interest, reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief, pursuant to NYLL §§198, 663.

5.     Plaintiff also brings this action, for age and disability discrimination, and retaliation based on her termination in violation of the New York City Human Rights Law ("NYCHRL") and New York State Human Rights Law (the "NYSHRL"), for which she seeks compensatory damages, interest, reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief.

## ADMINISTRATIVE PROCEDURES

6.     Plaintiff intends to file a Charge of Discrimination with the Equal Employment Opportunity Commission for violations of the Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA"), and, if filed, will amend this action to include those claims at the appropriate time.

7.     Pursuant to NYCHRL §8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of Corporation Counsel, within ten days of its filing.

8.      Prior to filing this Complaint, counsel for Plaintiff and Defendants entered into a Tolling Agreement, which tolled the statute of limitations from June 29, 2022 through September 30, 2022, which Tolling Agreement expired by its terms on August 31, 2022.

9.      The statute of limitations on the State claims is further tolled by the Executive Orders issued by then Governor Andrew M. Cuomo, which tolled the statute of limitations on such claims from March 20, 2020 until November 3, 2020.

## JURISDICTION AND VENUE

10.      Jurisdiction of this Court over Plaintiff's FLSA claims is invoked pursuant to 29 U.S.C. §216(b), 42 U.S.C. §2000e and 28 U.S.C. §1331.

11.      Jurisdiction of this Court over Plaintiff's NYLL NYCHRL, and NYSHRL claims is invoked pursuant to 28 U.S.C. §1367(a) as the NYLL and NYSHRL claims are so related to Plaintiff's FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

12.      Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the acts or events giving rise to the claims occurred within Southern District and the residence of Defendants are within the Southern District.

## PARTIES

13.      Plaintiff is an individual who resides in the County of Queens, State of New York.

14.      Upon information and belief, Defendant Katz's Delicatessen of Houston St. Inc. ("Katz's") is a domestic corporation authorized to do business in the State of New York, County of New York, with its principal place of business located at 205 E. Houston Street, New York, New York 10002.

15.      Upon information and belief, Defendant Jake Dell ("Dell") is an owner and/or

officer of Katz's.

16.     At all relevant times mentioned herein, Dell had the power to hire, fire, and control the wages and working conditions of Plaintiff.

17.     Dell had authority to, and did in fact, exercise operational control over Katz's.

18.     Dell set the manner by which Plaintiff was to be paid while employed by Katz's.

19.     Katz's managers reported to Dell.

20.     Dell also participated and/or condoned the discrimination and retaliation of Plaintiff, as more fully set forth herein.

21.     At all times relevant, Defendants were covered by the FLSA, the NYLL, the NYCHRL and the NYSHRL.

22.     Defendants maintained a common policy and practice of, *inter alia*, not paying employees for all hours worked during their employment or otherwise notifying them of their rights under the law.

23.     At all relevant times, Defendants affected commerce within the meaning of 29 U.S.C. §203(b) by producing goods for interstate commerce, or handling, selling, or working on goods or materials that have been moved in or produced for interstate commerce.

24.     Upon information and belief, the gross annual volume of sales made or business done by Defendants was not less than $500,000.

25.     At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and the NYLL.

## FACTUAL ALLEGATIONS

26.     Plaintiff worked for Defendants as a server from 1995 until her termination in April 2022.

27.     Prior to March 2020, when Covid hit New York, Plaintiff generally worked a regular schedule for Katz's, being Thursdays through Sundays, on which days she would normally work from 10:30am until 11:00pm (or later), and on Wednesdays from 10:30am until 5:00pm (or later).

28.     At times, however, Plaintiff would work seventy hours per week, such as on holidays or when other co-workers were on vacation or sick.

29.     Despite working a schedule of about fifty-seven hours per week, Plaintiff never received minimum wage, overtime pay, or spread-of-hours pay as required under the FLSA and/or NYLL.

30.     In exchange for her services, Plaintiff received a check for one day's pay each week, and the remainder of her wages were paid in cash at a rate of $4.65 per hour.

31.     In or about 2018, Plaintiff's cash rate was increased to $4.95 per hour.

32.     The cash amounts paid by Defendants to Plaintiff (i.e. $4.65 per hour) were only for the hours worked, less the amount paid in the check.

33.     So, for example, when working fifty-seven hours a week, Defendants provided Plaintiff her the cash rate, being $4.65 per hour, multiplied by forty-five hours, as she was getting credit for twelve hours of work on her paycheck.

34.     The checks Plaintiff received in 2016 indicate that she only worked twelve hours each week, and that she was paid a rate of $8.32 for "Tipped Hours."

35.     This left Ms. Alava with receiving a check for a net amount of about $80.00 per week in her weekly checks.

36.     The $8.32 rate contained in her paychecks, and $4.65 she was paid in cash, was far less than the minimum wage required to be paid to employees in the hospitality industry in New

York City at the time.

37.    Given that Plaintiff was working fifty-seven hours per week for Katz's in 2016, the wages she received that year were in violation of the FLSA and NYLL as they were not enough to account for minimum wage, overtime wages, or spread of hours pay.

38.    For 2017, the manner of payment was the same, except instead of receiving about $80.00 per week in net pay, her pay actually reduced to about $77.00 per week.

39.    In 2018, the "Tipped Hours" rate was increased to $8.65 per hour, resulting in about $91.95 per week in net pay.

40.    This, again, was the only documented pay Plaintiff received from Defendants despite working fifty-seven hours per week at Katz's.

41.    At some point in 2019, Katz's changed the "Tipped Hours" rate to $10.00 per hour, again only accounting for Plaintiff working twelve hours per week, when she was still working fifty-seven hours.

42.    Also, although Katz's appeared to realize it was violating the law by paying starting to pay spread of hours pay in 2019, it was limited to only paying Plaintiff for one day per week.

43.    However, since Plaintiff was working five days per week, she should have been receiving spread of hours pay for all five days given the shifts she worked.

44.    This change resulted in Ms. Alava taking home about $116.88 in her documented pay for the weeks in 2019.

45.    Notably, after the pandemic, Plaintiff was asked to start clocking in and out every day, which was something that did not occur prior to March 2020.

46.    Nevertheless, even after being required to clock in and out, Plaintiff's paystubs still failed to accurately reflect the times she entered on the punch clock.

6

47.     When Ms. Alava returned to work for Defendants on July 8, 2020, she was placed in the back to dispatch to-go orders, and she worked in that capacity until April 26, 2021.

48.     On April 26, 2021, Plaintiff resumed her role as a server for Defendants with reduced hours.

49.     Based on the records Plaintiff has in her possession for the first half of 2020, the payments Defendants provided to Plaintiff remained the same as the 2019 payments.

50.     However, at some point in 2019, Defendants changed the records to reflect that Plaintiff was working generally twenty-four hours per week without any tip credit at a rate of $15.00 per hour.

51.     Further, the twenty-four documented hours on the paycheck were not an accurate reflection of the hours Plaintiff worked in 2020.

52.     The manner of pay remained the same for 2021 and 2022.

53.     However, starting in February 2022, Plaintiff took over the schedule of one of the waiters who left, named Bradley.

54.     At that time, Plaintiff started working approximately forty-five hours per week until the end of her employment.

55.     Yet, the records issued by Defendants still only indicated that Plaintiff was being paid for twenty-four hours of work, with the rest being paid in cash, with no overtime premium.

56.     On top of receiving less than minimum wage and no overtime wages for her services as set forth above, Plaintiff was never provided any documentation by Defendants that they were taking a tip credit against her wages, so that she should have been paid at least full basic minimum wage in New York City throughout her employment.

57.     Furthermore, to the extent any tip credit was claimed, it still was invalid as Plaintiff

was not permitted to keep the tips she received from patrons of the restaurant as she was required to share her tips with managers, bussers and meat cutters.

58.     Moreover, Kenny, one of Katz's managers, and others at the back cashiers, would take credit card tips and put them under their names so they would be divided amongst other these individuals, instead of the wait staff for who the tips were intended.

59.     These were further violations of the law as the meat cutters that Plaintiff shared her tips with did not regularly and ordinarily interact with patrons of the restaurant in order to share in Plaintiff's tips, and there is no question that management has no right to share in the tips with wait staff.

60.     A month before Plaintiff was terminated, there was a private party at Katz's that she took care of with two other servers.

61.     The servers were told that they would get $450 for the party, each getting $150, as they took care of the party the whole night.

62.     However, when Plaintiff went to obtain her portion of her tip, Kenny only gave her $100.

63.     Plaintiff and the other servers then complained to Pachi, another manager at Katz's, that they were not receiving the full $150 they were promised.

64.     The servers were told by management that they should be happy with the money they received and not bother them.

65.     Plaintiff then escalated this to the General Manager, Kevin, who simply reiterated what Pachi said, stating that they should just be happy receiving the wages they were given.

66.     It was later learned by Charlie that Kenny, a manager at Katz's, kept and distributed some of the tips.

67.     Throughout her employment, and especially towards the latter part of her employment after she complained about the tip misappropriation, Plaintiff started to be subjected to comments such as: "when will I have a nice schedule?  After you drop dead?"; "you must have piles of money sitting at home with how old you are."

68.     Kenny would also repeatedly ask Plaintiff how old she was and when she was going to retire.

69.     Although Plaintiff reported these comments to Ismail, the head waiter at Katz's, the complaints were ignored and laughed at as a joke, and Plaintiff was told that she should not be bothered with issues with the wait staff.

70.     In addition, shortly before her termination, Plaintiff injured herself while at the restaurant on two occasions.

71.     The first incident happened when one of the workers in the kitchen hit Plaintiff in the back with a cart full of meat.

72.     While she was encouraged by co-workers to file for worker's compensation, she was fearful of doing so as she did not want to lose her job.

73.     As a result, Plaintiff has been on medication to treat the pain, which lasts to the present.

74.     The second incident occurred in about February 2022, when Plaintiff slipped and fell at the end of the corridor.

75.     There were no signs that the floor was slippery that led to Plaintiff falling on her shoulder with pain traveling directly to her elbow and hand, which broke her fall.

76.     While witnessed by two of Katz's managers and another waitress, at no time was Plaintiff advised of her rights under the law, such as the right to file for worker's compensation.

9

77.     Then, on or about March 26, 2022, when Plaintiff was at the podium at Katz's, she was questioned by the patrons as to whether the price was the same from table service as it would be if they went to the counter for their orders.

78.     Plaintiff replied that the prices were the same but that because they were a party of more than six people, there would be surcharge imposed on their check.

79.     Thereafter, when the patrons decided to go to self-service, Plaintiff was approached by Ismail who advised that he had a conversation with management who told her that she was going to be disciplined for failing to serve a table – something that clearly did not happen.

80.     On or about March 27, 2022, Plaintiff complained about what transpired the prior day about her not wanting to serve the table and confronted Kenny about how he lied about her not wanting to serve the table.

81.     Kenny stated that he believed his position was right, despite the fact that the patrons were speaking in Spanish and Kenny does not speak Spanish.

82.     That same day, when Katz's was very busy – servers had about eight tables each and taking care of twenty-four patrons – Plaintiff's granddaughter came to Katz's as she was going to take her home that evening.

83.     Plaintiff asked the manager, Pachi, to take care of her granddaughter until it was time for her to go home, and she said it would be fine.

84.     Pachi then gave a hot dog to the granddaughter, and they sat and waited for Plaintiff to finish her shift.

85.     Plaintiff provided some food to her family while they were waiting and when she was leaving by the register, she was told that she has to pay for the food she gave to her family.

86.     Pachi stated that the hot dog she gave to her daughter was on the house and that she

would give a check to Plaintiff on the next day for the other items provided to her family she came in so she could pay them, to which Plaintiff agreed.

87.   When Plaintiff was scheduled to arrive for her next shift, she received a call from Pachi stating that she left out a lot of items that were provided to the family, even though she promised she would fully account for everything that was provided to her family that day.

88.   Plaintiff then met with Dell, and she explained everything that transpired.

89.   Plaintiff told Dell to look at the cameras to confirm that her version of the events was accurate, but he refused to do so.

90.   Although Plaintiff accounted for all the items she recalled giving to the family that day, she was accused of not accounting for a cheesecake.

91.   After being at the restaurant since 1995, Plaintiff stated she would not be stupid enough to steal from the restaurant and knew cameras were everywhere and would readily pay for same if such was the case.  Plaintiff was then sent home for the day.

92.   The following week, Plaintiff was terminated by Dell.

93.   It is clear that any proffered reason by Defendants for Plaintiff's termination would be a pretext for discrimination and retaliation as she did not engage in the acts she was terminated for, and, after twenty-six years of dedicated service without issue, termination was certainly not warranted for allegedly not serving a table or not paying for a piece of cheesecake that she offered to pay for prior to being terminated.

94.   Plaintiff's termination came on the heels of her complaining about tip misappropriation by management, sustaining numerous injuries for which she should have received information about worker's compensation, and after she complained of the age discrimination she was subjected to, which was never addressed.

11

**COUNT ONE**
**(Failure to Pay Minimum Wages – FLSA)**

95.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

96.     Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

97.     Defendants were required to pay Plaintiff at least the applicable minimum wage rates for all hours worked.

98.     Defendants failed to pay Plaintiff the minimum wages to which she was entitled under the FLSA.

99.     Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

100.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

101.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

102.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

103.    As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT TWO**
**(Failure to Pay Overtime Wages – FLSA)**

104.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

105.     The FLSA requires that employers pay all employees at least one and one-half times the employee's wage for all hours worked in excess of forty during any workweek, unless they are exempt from coverage.

106.     During her employment, Plaintiff regularly worked overtime, without receiving any premium pay for hours worked in excess of forty per workweek.

107.     At all relevant times, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff the required overtime wages to which she is entitled.

108.     As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT THREE**
**(Illegal Deductions from Gratuities – FLSA)**

109.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

110.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

111.     At all relevant times, Defendants have employed, "employee[s]," including Plaintiff.

112.     Throughout the statute of limitations period covered by these claims, Defendants knowingly retained/misappropriated gratuities belonging to Plaintiff.

113.     Plaintiff seeks damages in the amount of her respective unpaid gratuities, liquidated damages as provided by the FLSA, attorneys' fees and costs, post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## COUNT FOUR
### (Failure to Pay Minimum Wages – NYLL)

114.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

115.     Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

116.     At all times relevant, Plaintiff has been an employee of Defendants, and Defendants have been employers of Plaintiff within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

117.     At all times relevant, Plaintiff has been covered by the NYLL.

118.     Defendants have failed to pay Plaintiff the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

119.     Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff the full minimum wage at a rate for large employers in New York City.

120.     Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff, Defendants willfully violated the NYLL, Article 19, §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

121.     Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid minimum wages, liquidated damages as provided for by the

NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT FIVE
### (Failure to Pay Overtime Wages – NYLL)

122.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

123.    The NYLL requires that employers pay all employees at least one and one-half times the employee's wage for all hours worked in excess of forty during any workweek, unless they are exempt from coverage.

124.    During his employment, Plaintiff received straight pay of less than State minimum wage per week for all hours worked, without any premium pay for hours worked in excess of forty (40) per workweek.

125.    At all relevant times, Defendants willfully, regularly, repeatedly, and knowingly failed to pay Plaintiff the required overtime wages to which he is entitled.

126.    Plaintiff seeks damages for his unpaid overtime wages, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT SIX
### (Failure to Pay Spread of Hours – NYLL)

127.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

128.    During her employment, Plaintiff frequently worked more than ten hours in a workday.

129.    Defendants willfully failed to compensate Plaintiff with an extra hour's pay at the basic New York minimum hourly wage rate on days in which the length of her workday was more

than ten hours, as required by New York law.

130.    Through their knowing or intentional failure to pay Plaintiff spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

131.    Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid spread-of-hour wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## COUNT SEVEN
### (Illegal Deductions from Gratuities – NYLL)

132.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

133.    Pursuant to NYLL § 196-d, "[n]o employer or his agent or an officer or agent of any corporation, or any other person. . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

134.    At all relevant times, Defendants knowingly retained/misappropriated gratuities belonging to Plaintiffs.

135.    As a result of Defendants' unlawful conduct, Plaintiffs was denied tips to which she was otherwise entitled.

136.    Defendants willfully and intentionally violated § 196-d of the NYLL.

137.    Due to Defendants' unlawful conduct, Plaintiff is entitled to recover from Defendants their respective unpaid gratuities, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT EIGHT

16

**(Wage Notice Violations– NYLL)**

138.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

139.     Defendants failed to furnish Plaintiff with wage notices as required by NYLL §195(1), in English or in the language identified by each employee as their primary language, at the time of hiring and with any change in pay, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary

140.     Due to Defendants' violations of NYLL §195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs with proper wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-b).

<u>**COUNT NINE**</u>
**(Wage Statement Violations– NYLL)**

141.     Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

142.     Defendants failed to furnish Plaintiff with a statement with every payment of wages as required by NYLL §195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

143.    Due to Defendants' violations of NYLL §195(3), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff with proper wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-d).

## COUNT TEN
### (Discrimination Based on Age in Violation of the NYCHRL)

144.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

145.    Katz's violated the NYCHRL when it terminated Plaintiff's employment because of her age.

146.    Katz's acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

147.    As a result of Katz's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT ELEVEN
### (Discrimination Based on Disability in Violation of the NYCHRL)

148.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

149.    Katz's violated the NYCHRL when it terminated Plaintiff's employment because of her disabilities and/or perceived disabilities.

150.    Katz's acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

151.    As a result of Katz's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT TWELVE
### (Discrimination Based on Age in Violation of the NYSHRL)

152.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

153.    Katz's violated the NYSHRL when it terminated Plaintiff's employment because of her age.

154.    Katz's acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

155.    As a result of Katz's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT THIRTEEN
### (Hostile Work Environment in Violation of NYCHRL)

156.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

157.    As set forth herein, Katz's fostered a working environment that was permeated with

discriminatory intimidation, ridicule and insult against older and disabled/perceived disabled employees.

158.    Plaintiff was subjected to such conduct, which was severe or pervasive, and altered the conditions of her work environment.

159.    The hostile conduct was engaged in by Katz's supervisors and managers who had authority over Plaintiff, thereby making Katz's liable for the wrongful conduct.

160.    As a result of Katz's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FOURTEEN
### (Hostile Work Environment in Violation of NYSHRL)

161.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

162.    As set forth herein, Katz's fostered a working environment that was permeated with discriminatory intimidation, ridicule and insult against older and disabled/perceived disabled employees.

163.    Plaintiff was subjected to such conduct, which was severe or pervasive, and altered the conditions of her work environment.

164.    The hostile conduct was engaged in by Katz's supervisors and managers who had authority over Plaintiff, thereby making Katz's liable for the wrongful conduct.

165.    As a result of Katz's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FIFTEEN

20

**(Retaliation in Violation of the NYCHRL)**

166.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

167.    Plaintiff participated in protected activities under the NYCHRL by, among other things, complaining of continued harassment in the workplace.

168.    After lodging her complaints to Defendants, she was terminated.

169.    Katz's acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

170.    As a result of Katz's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT SIXTEEN**
**(Retaliation in Violation of the NYSHRL)**

171.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

172.    Plaintiff participated in protected activities under the NYSHRL by, among other things, complaining of continued harassment in the workplace.

173.    After lodging her complaints to Defendants, she was terminated.

174.    Katz's acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

175.    As a result of Katz's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT SEVENTEEN**

**(Aiding and Abetting Discrimination in Violation of the NYCHRL)**

176.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

177.    As a result of the aforementioned actions, Dell discriminated against Plaintiff on account of her age and/or disability with respect to the terms, conditions and privileges of her employment in violation of the NYCHRL.

178.    Dell violated the NYCHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

179.    Dell acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

180.    As a result of Dell's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT EIGHTEEN**
**(Aiding and Abetting Discrimination in Violation of the NYSHRL)**

181.    Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

182.    As a result of the aforementioned actions, Dell discriminated against Plaintiff on account of her age and/or disability with respect to the terms, conditions and privileges of her employment in violation of the NYSHRL.

183.    Dell violated the NYSHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

184.    Dell acted intentionally and with malice and/or reckless indifference to Plaintiff's

statutorily protected rights.

185.    As a result of Dell's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

A.    Awarding Plaintiff damages for the amount of unpaid wages under the FLSA and/or the NYLL, including unpaid minimum wages, overtime wages, spread of hours, and gratuities;

B.    Awarding Plaintiff liquidated damages in an amount equal to wages owed pursuant to 29 U.S.C. §216(b) and liquidated damages and other statutory remedies pursuant to the NYLL;

C.    Awarding Plaintiff compensatory damages, lost wages, emotional distress damages, liquidated damages, interest, attorneys' fees and costs for her age and disability discrimination, and retaliation claims under the NYCHRL and the NYSHRL;

D.    Awarding pre- and post-judgment interest as permitted under the law;

E.    Awarding the costs of this action together with reasonable attorneys' fees; and

F.    Awarding Plaintiff punitive damages; and

G.    Granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and claims with respect to which

they have a right to a jury trial.

Dated: September 12, 2022
      Syosset, New York

Respectfully submitted,
**LAW OFFICES OF YALE POLLACK, P.C.**


By: */s/ Yale Pollack*
      Yale Pollack, Esq.
66 Split Rock Road
Syosset, New York 11791
(516) 634-6340
ypollack@yalepollacklaw.com

*Attorneys for Plaintiff*